**NOT FOR PUBLICATION** **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| SUSAN CUNNINGHAM, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | : | Civil Action No. 12-6594 (FSH) |
| v. | : | **OPINION & ORDER** |
| JET AVIATION FLIGHT SERVS., INC., | : |  |
| Defendant. | : | Date: April 22, 2013 |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Court has reviewed the submissions of the parties and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On September 14, 2012, Plaintiff Susan Cunningham filed a Complaint against Defendant Jet Aviation Flight Services, Inc. in the Superior Court of New Jersey, Bergen County. (Compl., Ex. A to Not. of Removal, Oct. 19, 2012, ECF No. 1.) According to the Complaint, Defendant is a jet aircraft services company that employed Plaintiff as a pilot from May 1, 2009 to July 26, 2012, during which time Plaintiff flew exclusively for a particular client. (*Id.* ¶¶ 1-2.) Plaintiff allegedly observed and complained to Defendant's representatives about a number of violations of Defendant's Flight Operations Manual and applicable laws and

regulations during the four months leading up to her termination.  (*Id.* ¶¶ 8, 11, 15.)  Specifically, Plaintiff alleges that: (1) she and her crew were routinely called about duty assignments one to four hours before a scheduled flight, thereby depriving them of the required rest period; (2) she did not receive the required thirteen rest periods of twenty-four hours during each calendar quarter; and (3) two Cabin Service Representatives ["CSRs"] assigned to work with Plaintiff had not received necessary aircraft training.  (*Id.* ¶¶ 6-7, 10-11, 12-14.)

The Complaint further alleges that on July 26, 2012, Defendant attempted to contact Plaintiff for a duty assignment during her rest period and Plaintiff did not return the call until sometime later because she was swimming.  (*Id.* ¶ 17.)  Plaintiff alleges that she then reported to Defendant's headquarters where she was told that she was terminated because the client had "lost confidence" in her due to her failure to answer her phone.  (*Id.* ¶ 18.)  Plaintiff alleges that her termination was actually in retaliation for her reports to her supervisor regarding the alleged violations of the Flight Operations Manual, law, and regulations.  (*Id.* ¶ 19.)  On the basis of these allegations, the Complaint seeks relief under New Jersey's Conscientious Employee Protection Act, N.J.S.A. § 34:19-1 *et seq.* ["CEPA"] and for wrongful termination under *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980).  (*Id.* ¶¶ 19-26.)

On October 19, 2012, Defendant removed the case to this Court based only upon federal question jurisdiction, contending that federal law completely preempts Plaintiff's state law claims.  (Not. of Removal ¶ 5, Oct. 19, 2012, ECF No. 1.)  Based on the same preemption argument, Defendant filed the present motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss, Oct. 29, 2012, ECF No. 7.)

II.     **LEGAL STANDARD**

2

To survive a motion to dismiss filed under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotation marks omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotation marks omitted).

### III. DISCUSSION

Defendant argues that federal aviation law preempts Plaintiff's state law employment claims and that the Complaint therefore fails to state a claim upon which relief can be granted. The Airline Deregulation Act ["ADA"] was enacted in 1978 "to prevent the states from re-regulating airline operations so that competitive market forces could function." *Gary v. The Air Grp., Inc.*, 397 F.3d 183, 186 (3d Cir. 2005) (citations omitted). To do so, the ADA includes a preemption clause stating that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier

that may provide air transportation." 49 U.S.C. § 41713(b)(1). The Court must therefore determine whether Plaintiff's claims under New Jersey law are "related to a price, route, or service of an air carrier," such that federal law expressly preempts those claims.[1] The words "related to" are broadly interpreted such that any "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted . . . ." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Thus, the "requisite connection exists either where the law expressly references the air carrier's prices, routes or services, or has a forbidden significant effect upon the same." *Gary*, 397 F.3d at 186 (internal quotation marks and citations omitted). Certain state law actions, however, may have an effect that is "too tenuous, remote, or peripheral . . . to have preemptive effect." *Id.* (citing *Morales*, 504 U.S. at 390; *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 191 (3d Cir. 1998)).

In *Gary*, a copilot sought relief under CEPA for retaliatory discharge, claiming that he was terminated after complaining that the pilot with whom he was assigned to fly was unqualified and did not take proper safety measures. 397 F.3d at 185. Because no claim was made "that the ADA elements of price or route" were involved, the Third Circuit was called upon to determine whether the plaintiff's "state law retaliation claim ha[d] a forbidden significant effect upon [the defendant's] service." *Id.* at 187 (internal quotation marks omitted). Observing that the plaintiff had never refused a work assignment and his complaints "did not have the potential to interrupt service by grounding a particular flight," the Court concluded that the case was "more properly viewed as comparable to a garden variety employment claim" and

---

[1] The Whistleblower Protection Program ["WPP"] amended the ADA in 2000 to protect airline employees who report violations of air safety regulations by providing a complaint procedure through the Department of Labor. Because the WPP does not speak to the issue of preemption, it does not expand the scope of preemption under the ADA. *Gary*, 397 F.3d at 190. Neither party argues otherwise.

held that the claim was not expressly preempted by the ADA. *Id.* at 189-90.

Here, Plaintiff alleges three distinct flight safety violations and contends that her complaints about each led to her unlawful termination. As *Gary* makes clear, whether there is a sufficient nexus between a protected activity and an air carrier's service is a fact-specific inquiry that depends on the ability of the protected activity to disrupt the carrier's flight operations. *See id.* (holding that the connection between the plaintiff's claim and the defendant's service was "simply too remote and too attenuated to fall within the scope of the ADA"). The Court will therefore address each of Plaintiff's complaints separately to determine whether the complaint had the ability to interrupt flight service and hence whether the ADA preempts state law claims based on such complaints.

### A.     Deprivation of Rest Period

First, Plaintiff complained that she and her crew were called with duty assignments between one and four hours before a scheduled flight assignment, in violation of rules requiring ten consecutive hours of rest before a flight. (Compl. ¶¶ 6-7.) Unlike the complaint in *Gary* about a pilot's qualifications, the issue of improper duty assignment calls relates directly to Defendant's ability to provide air carrier services. The Complaint indicates that Plaintiff flew exclusively for a single client, often on short notice. (*Id.* ¶¶ 2, 7.) If Plaintiff objected to receiving calls that modified her flight schedule, it would directly impact her availability to provide the flight services that the client demanded.[2]  In fact, the Complaint indicates that the

---

[2] Plaintiff suggests that because Defendant is not an airline with a regular flight schedule, her concerns about duty scheduling cannot have affected Defendant's service. (Opp'n Br. 4, Nov. 7, 2012, ECF No. 8 ("[s]ignificantly, the Complaint does not even allege that Defendant provides scheduled flight service").) There is no requirement in the ADA preemption analysis that the complaint affect a regularly scheduled flight service by a commercial airline. *See* 49 U.S.C. § 40102(a)(1) (broadly defining "air carrier" as "a citizen of the United States

client allegedly lost confidence in Plaintiff as a result of the inability to contact her on short notice when she had been swimming. (*Id.* ¶ 17.)  For Defendant, a private air carrier with only two regional pilots, (*id.* ¶ 11), the inability to contact a pilot for a duty assignment is tantamount to that pilot's refusal to fly, which has been held to affect the service of the air carrier such that ADA preemption applies.  *See Botz v. Omni Air Int'l*, 286 F.3d 488, 494-95 (8th Cir. 2002) (observing that while a "large air carrier employing hundreds of flight attendants might encounter few difficulties" replacing one refusing to fly, that "might prove problematic or even impossible . . . for a small carrier"); *see also Gary*, 397 F.3d at 189 (observing that "[u]nlike Botz, Gary never refused a work assignment" and therefore finding that Gary "did not have the potential to interrupt service by grounding a particular flight.").  Consequently, Plaintiff's complaints about deprivation of a proper rest period before a flight were related to the service of an air carrier, and the ADA preempts state law claims based on such complaints.

### B. Days Off Per Quarter

Second, Plaintiff complained that each crew member was not receiving the required thirteen rest periods of twenty-four hours each quarter. (Compl. ¶ 10-11.)  Like the issue of improper deprivation of a rest period before a flight, Plaintiff's complaints about days off relate to Defendant's ability to provide air carrier services because these complaints go directly to whether Plaintiff and her crew would be available to provide flight services on a particular day.  Plaintiff specifically complained to her supervisor that Defendant would need to hire a third pilot in order to meet its clients' demands while complying with the rules and regulations governing days off. (*Id.* ¶ 11.)  This demonstrates that a dispute about days off would directly impact

---

undertaking by any means, directly or indirectly, to provide air transportation").  As discussed herein, Plaintiff's alleged complaints about deprivation of rest periods had the ability to impact Defendant's chartered flight services, which is sufficient to trigger ADA preemption.

Defendant's ability to maintain its level of service in providing on-demand flights each day. Accordingly, Plaintiff's complaints about her number of days off per quarter also relate to the service of an air carrier, and the ADA preempts state law claims based on such complaints.

### C. CSR Training

Third, Plaintiff complained that two CSRs assigned to work with her had not received necessary aircraft training.  (Compl. ¶¶ 12-15.)  Unlike Plaintiff's other complaints regarding flight assignment calls during rest periods and days off per quarter, her complaints about CSR training did not have the ability to disrupt Defendant's flight operations.  As to these complaints, this case is indistinguishable from *Gary*, where a co-pilot complained that the pilot with whom he was paired was not properly qualified.  The *Gary* decision makes clear that where an air carrier employee's complaints do not affect the employee's availability to work particular days and no particular flight is disrupted, the connection to the air carrier's service is "simply too remote and too attenuated to fall within the scope of the ADA."  397 F.3d at 189.  Consequently, to the extent Plaintiff's state law claims arise from her complaints concerning CSR training, those claims are not preempted and will not be dismissed pursuant to Rule 12(b)(6).  However, because this case was removed only on the basis of federal question jurisdiction[3] and no federal question remains in the case, Plaintiff's state law CEPA and *Pierce* claims of retaliatory discharge arising from her complaints regarding CSR training will be remanded to the Superior Court of New Jersey, Bergen County, for further proceedings.

### IV. CONCLUSION & ORDER

For the reasons stated above,

---

[3] Defendant was aware of the citizenship of Plaintiff and itself, (Not. of Removal ¶ 1; Compl. 1), and could have asserted diversity jurisdiction as an additional basis to support removal but elected not to do so.

**IT IS** on this 22nd day of April, 2013,

**ORDERED** that Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED** in part;

**IT IS FURTHER ORDERED** that Plaintiff's claims arising from alleged complaints concerning receipt of duty assignments during rest periods and lack of twenty-four hour rest periods are **DISMISSED**; and

**IT IS FURTHER ORDERED** that Plaintiff's claims arising from alleged complaints concerning lack of adequate training for Cabin Service Representatives are **REMANDED** to the Superior Court of New Jersey, Bergen County, for further proceedings; and

**IT IS FURTHER ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**